IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-44-FL

| | | |
|---|---|---|
| MICHAEL A. SPIVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RESEARCH TRIANGLE REGIONAL PUBLIC TRANSPORTATION AUTHORITY d/b/a TRIANGLE TRANSIT, | ) ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment. (DE 19). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R"), (DE 33), wherein it is recommended that the defendant's motion be granted. Plaintiff timely filed objections to the M&R, and defendant has responded. In this posture, the matter is ripe for ruling. For the reasons stated below, the court adopts the recommendation of the magistrate judge as its own and grants defendant's motion for summary judgment.

**STATEMENT OF THE CASE**

On December 23, 2013, plaintiff initiated this action pro se in the Wake County, North Carolina, Superior Court raising federal and state law claims related to the termination of his employment with defendant. (DE 1). In sum, plaintiff alleges he was discriminated against in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the North

Carolina Persons with Disabilities Protection Act ("NCPDPA")[1], N.C.G.S. § 168A et seq., when his requests for a reasonable accommodation related to his Post-Traumatic Stress Disorder ("PTSD") were denied. (Compl. ¶ 7-32, DE 1). Plaintiff also claims defendant retaliated against him for his accommodation request, by the issuance of a negative employment evaluation, and that he was discriminated against under the ADA when defendant terminated his employment on the basis of his disability. Id.

Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441, invoking this court's federal question subject matter jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. (DE 1). On October 27, 2014, defendant moved for summary judgment on plaintiff's claims, to which plaintiff responded in opposition, and defendant replied. (DE 19, 20, 27-29). On January 30, 2015, without obtaining leave of court, plaintiff filed a sur-reply to defendant's motion for summary judgment. (DE 30). Defendant subsequently filed a motion to strike plaintiff's sur-reply, to which plaintiff did not respond. (DE 31).[2]

## STATEMENT OF THE FACTS

The court herein adopts by reference the facts as recited in the M&R, and summarizes their contents briefly here.[3] Plaintiff was employed by defendant as a bus operator from June 2008 until

---

[1] The magistrate judge recommends that plaintiff's claims under the NCPDPA fail as a matter of law, because plaintiff has also filed claims under the ADA. (M&R at 31-32, DE 33). According to the text of the NCPDPA, such claims are mutually exclusive. Id. As plaintiff has made no specific objection to this recommendation and the court finds no clear error, defendant's motion for summary judgment on plaintiff's NCPDPA claim is granted as a matter of law.

[2] Because plaintiff failed to respond to the motion to strike, the magistrate judge allowed defendant's motion. Plaintiff does not object to the magistrate judge's recommendation. (Pl. Obj to M&R at 10, DE 34). Accordingly, plaintiff's sur-reply is not entitled to consideration.

[3] Plaintiff does not raise any objection as to whether the magistrate judge's statement of the facts adequately represents the evidentiary record. Plaintiff does, however, raise many generalized objections to the truthfulness of the deposed parties and the way defendant handled plaintiff's safety concerns which the court addresses more fully herein. (See generally Pl. Obj. to M&R, DE 34).

2

May 2013. During plaintiff's employment, he was involved in three incidents that caused passenger injuries. Between August and September of 2009, two passengers were injured when they fell from their seats after plaintiff applied the bus brakes. Plaintiff received no discipline as a result of these incidents. In January 2011, a third passenger was injured when plaintiff applied the brakes of the bus as he approached a traffic light. Defendant initially held plaintiff responsible for the incident, and shortly thereafter, plaintiff began a dialogue with defendant about passenger safety on the buses, asking defendant to further investigate the anti-lock braking system, and to provide more padding and protection for passengers in the front of the bus. During the subsequent investigation in January 2011, plaintiff also raised the possibility of installing modesty panels, or barriers, between the front passenger seats and the back of the driver's seat as a remedy for passenger injuries. After further investigation, defendant found plaintiff not responsible for the incident, but defendant determined that a modesty panel would not effectively prevent passenger injuries. Padding was added to certain areas of the buses, however. Plaintiff was notified of this result on January 27, 2011.

Between May and July 2011, plaintiff reinitiated dialogue with defendant about the modesty panels, sending defendant several letters and packages. Plaintiff indicated that he was unaware of defendant's re-consideration of his responsibility for the third injury, and that he believed he still was disqualified unfairly for a safety bonus as a result of the January incident. Plaintiff also re-emphasized the need for modesty panels. In September 2011, defendant invited plaintiff to speak before the Triangle Transit Safety Committee, a committee comprised of the heads of defendant's various departments and tasked with ensuring defendant's satisfaction of safety goals and expectations. Throughout September and November 2011, plaintiff and defendant continued discussing the feasibility of modesty panels, their efficiency in preventing injury, and the problems

3

that could arise under the bus manufacturing guidelines and general safety standards. Ultimately, defendant found the modifications unfeasible based on the minor nature of the injuries suffered by the passengers, and defendant instituted administrative controls instead. In October 2011, plaintiff received his annual performance evaluation. While the evaluation contained one criticism, plaintiff was not admonished for the incidents that caused passenger injury, and received a 3% merit raise. From February 2012 through April 2012, plaintiff continued to write defendant concerning the modesty panels, and defendant, after continuing to research the issue, declined again to implement plaintiff's suggestions.

In November 2012, plaintiff submitted a request for leave under the Family and Medical Leave Act and defendant's short term disability policies. Plaintiff's physician indicated that plaintiff had suffered from PTSD since his time in the military years before, and defendant granted plaintiff's request for leave. In April 2013, when plaintiff had not returned to work, defendant informed plaintiff that his medical and disability leave would be exhausted in May 2013, and asked plaintiff whether he had been cleared to return to work. When plaintiff told defendant he was not cleared for work, defendant informed him that he would be terminated in May should he still be unable to return. Plaintiff did not inquire about other job positions or light duty. On May 7, 2013, defendant terminated plaintiff's employment. Plaintiff testified in his deposition that as of the date of his deposition in 2014, he still was not medically cleared to return to any kind of employment.

**COURT'S DISCUSSION**

1. Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the

court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the nonmoving party then must affirmatively demonstrate, with specific evidence, that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

5

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2. Americans with Disabilities Act

The ADA provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Further, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity," or failure to accommodate, is also a form of discrimination under the ADA. Id.

To establish a disability discrimination claim, the ADA employs the burden-shifting proof structure adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995). When applying the burden-shifting approach, the plaintiff must first establish a prima facie case of discrimination. Id. The defendant then must articulate "some legitimate, nondiscriminatory

explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Id. Finally, if defendant carries its burden of production, "the presumption created by the prima facie case 'drops out of the picture,' and the plaintiff bears the ultimate burden of proving that she has been the victim of intentional discrimination." Id. (internal citations omitted). The final step requires plaintiff to demonstrate that the employer's proffered assertions are untrue and that plaintiff's disability was the true motivating factor. See Rowe v. Marley Co., 233 F.2d 825, 831 (4th Cir. 2000).

3. Objections to the M&R

Plaintiff lodges five objections. First, plaintiff objects to the burden of proof used by the magistrate judge in the M&R. Secondly, plaintiff raises four merit-based objections concerning the magistrate judge's recommendations. The court will address plaintiff's objections in turn.

a. ADA Discrimination Claim Burden of Proof

Plaintiff first questions whether the magistrate judge utilized the proper burden of proof framework in making his recommendations. Plaintiff argues that the McDonnell Douglas framework is not the proper framework for his claim. (Pl. Obj. to M&R at 12, DE 34). Plaintiff cites various unpublished district court opinions which he contends represent the appropriate proof structure. Id. Plaintiff's objection is without merit. The Fourth Circuit has instructed that this court must apply McDonnell Douglas. See Ennis, 53 F.3d at 58.

b. Objections on the Merits

Plaintiff objects to the magistrate judge's recommendations on four merit-based grounds. Plaintiff contends that: 1) he has provided sufficient notice of his disability and affirmatively requested a reasonable accommodation; 2) he was retaliated against based on his request for

7

accommodation; 3) his retaliation claim is not time-barred; and 4) he was terminated because of his disability on May 7, 2013. (Pl. Obj. to M&R, DE 34).

> i. Failure to Accommodate

To establish a prima facie case of failure to accommodate, plaintiff must show that 1) plaintiff qualifies as an individual with a disability pursuant to 29 U.S.C.A. § 705(20); 2) defendant employer had notice of the disability; 3) plaintiff could perform essential functions of the job with a reasonable accommodation; and 4) that employer refused to make any reasonable accommodation. Reyazuddin v. Montgomery Cnty., Maryland, 789 F.3d 407, 414 (4th Cir. 2015). Part of plaintiff's prima facie case is showing that an accommodation is reasonable on its face. Id. The court then applies the McDonnell Douglas framework to shift the burden to the employer to show that a proposed reasonable accommodation would cause the employer undue hardship under the particular circumstances. Id. An employer is not required to provide the exact accommodation requested by the employee, and may provide an alternative reasonable accommodation. Id. at 415-16. A qualified individual under the ADA is at all times defined as, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111 (8).

Defendant argues that it is entitled to summary judgment, because plaintiff never provided it with notice that plaintiff was seeking a disability related accommodation. Plaintiff claims that his status as a disabled person repeatedly was overlooked by defendant throughout his employment. Plaintiff supports this contention by pointing to the July 23, 2011, package plaintiff sent to defendant, in which plaintiff included a cover letter stating, "I am an American with disabilities and a Veteran with Disabilities, my intent is to avoid someone from becoming a person with a

8

disability." (Pl. Obj. to M&R at 5, DE 34). Plaintiff now has indicated that the passengers falling from their bus seats triggered his pre-existing PTSD. (Spivey Dep. at 72:11-74.4). Plaintiff concedes, however, that from May through July 2011, when plaintiff was advocating for the bus modifications, plaintiff never told defendant directly that the passenger injuries triggered his PTSD, nor did plaintiff indicate that he was seeking an accommodation for that disability.[4] (Pl. Obj. to M&R at 5, DE 34)

The duty to engage in an interactive process to identify a reasonable accommodation is triggered only when an employee communicates to the employer the existence of his disability and his desire for an accommodation for that disability. Wilson v. Dollar General Corp., 717 F.3d 337, 346-47 (4th Cir. 2013) (internal citations omitted). The employee must provide his employer with information sufficient to apprise the employer of both the disability and the desire for accommodation. Id. (emphasis added).

Plaintiff now contends that the letter proclaiming his protected status, in combination with his advocacy for modesty barriers, was sufficient to put defendant on notice that he was requesting an accommodation. Further, plaintiff claims that the responsibility was on defendant to inquire about what accommodation plaintiff may have needed once defendant was told of plaintiff's protected status, and to engage in an "informal interactive process" with plaintiff. (Pl. Obj. to M&R at 5-6, DE 34).

---

[4] In his memorandum in opposition to summary judgment, plaintiff argued other grounds for defendant's knowledge of his disability, but plaintiff does not object to the magistrate judge's determination that these grounds contradicted plaintiff's sworn testimony and evidence. (M&R at 24, DE 33) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement...without explaining the contradiction or attempting to resolve the disparity." citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999)).

9

There is no evidence on the record, however, indicating that plaintiff ever provided defendant with sufficient information to make the connection between plaintiff's requests for modesty panels and plaintiff's July 23, 2011, statement of disability. In plaintiff's objections, plaintiff repeatedly mentions the injuries of passengers caused by the bus design. Plaintiff fails to point out anywhere in the record where he made it clear to defendant, prior to these court proceedings, that it was plaintiff's own safety, as a result of his disability, at issue.[5]

In conclusion, plaintiff has failed to establish a prima facie case of failure to accommodate discrimination. The court reaches neither the question of whether modesty panels were a "reasonable" accommodation for plaintiff's alleged disability, nor whether installing the panels would cause defendant an "undue hardship."

      ii.      Retaliation

Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. §12203(a). To establish a prima facie retaliation claim, plaintiff must show that: 1) he was engaged in a protected activity; 2) defendant took an adverse employment action against him; and 3) there was a causal link between the protected activity and the adverse employment action. Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001). Only when plaintiff establishes a prima facie case of retaliation will the burden shift to defendant to rebut the presumption of retaliation. Id. A plaintiff need not establish that the conduct he opposed actually constituted an ADA violation in order to prove the

---

[5] Plaintiff fails to demonstrate that the circumstances surrounding the passenger injuries are material to his ADA claim. This court will not analyze whether defendant possessed general safety responsibilities under a "Federal Transit Administration Model Transit Bus Safety and Security Program," the North Carolina Department of Transportation, or the American Public Transportation Association. Only plaintiff's complaints under the ADA are properly before the court.

10

first element, but rather, the complaint must allege only the predicate for a reasonable, good faith belief that the behavior plaintiff is opposing violates the ADA. Freilich v. Upper Chesapeake Health Inc., 313 F.3d 205, 216 (4th Cir. 2001) (internal citations omitted).

Plaintiff alleges that defendant retaliated against him by including the comment that plaintiff was "not as open to corrective feedback regarding his performance and comes across in a negative manner when he is in disagreement" within his 2011 annual performance evaluation. (Spivey Dep. at 100-01, Ex. 18). Plaintiff contends he received this "negative" evaluation based on his advocacy for modesty barriers. Id. Plaintiff raises no objection to the magistrate judge's determination that plaintiff's evaluation was otherwise very positive. Plaintiff asserts that he advocated for the bus modifications because, "passengers are getting injured and nothing changed for them, there is a negative response to plaintiff (sic) performance, because his performance depends on the equipment safety for him and his passengers." (Pl. Obj. to M&R at 8, DE 34).

It is undisputed that plaintiff and defendant spent many hours studying the bus design, and attempting to make the buses safer for all passengers after three unfortunate accidents on plaintiff's bus. It is less clear to the court, however, that plaintiff's continued conversation with defendant about safety was related to the ADA or discrimination against disabled individuals. While plaintiff sought to have the panels placed in the wheelchair accessible section of the bus, there is no evidence that the injured passengers were disabled, nor that plaintiff was concerned that disabled passengers were exposed to any greater risk than other passengers. Further, plaintiff admits that he began opposing defendant's alleged discrimination only after the third incident was classified as

11

"preventable[6]," although plaintiff alleges the timing is simply coincidental. (Spivey Dep. At 67, Ex. 10).

With regards to plaintiff's own claims of discrimination, as discussed above, plaintiff admittedly never gave defendant notice that the barriers were needed as an accommodation for plaintiff's disability. A reasonable person could not hold a good faith belief that an employer must divine an employee's need for accommodation from a blanket declaration of disability in one letter.

Additionally, plaintiff cannot satisfy the second element necessary to establish a prima facie case of retaliation based solely on a single comment in his performance review. A negative employment action is defined as the type of action that would dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington Northern and Santa Fe Ry. Co v. White, 548 U.S. 53, 68 (2006). Such a minor note in an otherwise positive performance evaluation would not dissuade the reasonable worker from fighting for his rights.

> "[R]eprimands and poor performance evaluations occur with some frequency in the workplace. While analysis of them is necessarily dependent on the circumstances, they are much less likely to involve adverse employment actions than transfers, discharges, or failures to promote whose impact on the terms and conditions of employment is immediate and apparent."

Adams v. Anne Arundel County Public Schools, 789 F.3d 422, 431 (4th Cir. 2015).

The magistrate judge briefly addressed the argument that plaintiff's termination could be considered a retaliatory action. (M&R at 30, DE 33). Plaintiff has made no specific objections to the magistrate judge's determinations that this particular argument contradicts plaintiff's own sworn statements. The court finds no clear error, and adopts the magistrate judge's determination that

---

[6] An accident classification of "preventable" alleges the bus driver was a contributing factor, and prevents that driver from receiving a safety bonus. (Chandler Decl. ¶ 3).

12

plaintiff has not pleaded facts sufficient to claim his termination was a retaliatory act by defendant. As a result, the court addresses plaintiff's termination claim separately below.

Finally, plaintiff fails to plead any facts demonstrating a causal link between his advocacy, and the critical comment in his performance evaluation.

> "To satisfy the third element, the employer must have taken the adverse employment action <u>because</u> the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."

<u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F. 3d 653, 657 (4th Cir. 1998) (emphasis in original).

Plaintiff fails to raise a specific objection to the magistrate judge's determinations on this subject, and simply points to <u>Thomas v. Bala Nursing & Retirement Center</u>, 2012 WL 2581057 (E.D.Pa. July 3, 2012). Plaintiff's case is distinguishable from <u>Thomas</u> in that plaintiff admits that he placed the responsibility on defendant to determine that plaintiff needed an accommodation. As explained above, plaintiff has the initial responsibility of requesting a reasonable accommodation, and an employer cannot be said to have retaliated against an employee because of alleged protected activity when the employer has no knowledge that the protected activity has occurred. Therefore, plaintiff's retaliation claims must fail.

### iii. Time-Bar

Plaintiff objects to the magistrate judge's determination that plaintiff's retaliation claims are time-barred regardless of the merits of the claim. To file a claim under the ADA in federal court, a plaintiff must first exhaust administrative remedies by filing a timely charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. §2000e-5(e); 42 U.S.C. §

13

12117(a). Failure to timely file a charge with the EEOC bars the claim in federal court. <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 262 (1980). Plaintiff argues that defendant engaged in a series of retaliatory actions from May 1, 2011, until April 25, 2013, and that the 180 days, therefore, began to run upon the latter date, the date of plaintiff's termination. Plaintiff, however, has pleaded no facts sufficient to show a series of retaliatory events. Plaintiff's negative evaluation and ultimate termination are the grounds for two separate, discrete claims, and each act is deemed to have occurred on the day it happened for the purposes of calculating the 180 day period. <u>See</u> <u>generally</u>, <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110-14 (2002). Although there is no dispute that plaintiff's termination claim is timely, plaintiff's retaliation claims, filed September 2013, arose from a negative performance review dated October 2011. (Spivey Dep., Ex. 18). September 10, 2013, the exact date of plaintiff's filing, is over 700 days from the date of the alleged retaliatory evaluation. As a result, any retaliation claim plaintiff may have pertaining to the negative evaluation must be dismissed on the alternative basis that is time-barred.

        iv.      Termination

Plaintiff objects to the magistrate judge's determination that plaintiff failed to provide defendant with a return to work date. Further, plaintiff argues that the magistrate judge erred in dismissing without consideration plaintiff's assertion that his disability time was calculated incorrectly. Plaintiff argues that defendant terminated his employment, despite an alleged return date of June 10, 2013. Plaintiff, in making these arguments, however, relies on facts not within the record. Plaintiff, in his sworn deposition, contended that he had not been cleared to return to work

14

since leaving Triangle Transit. (Spivey Dep. at 16:9-25).[7] Plaintiff's present argument that he in fact had a June 10, 2013, return date directly contradicts the record, and as a result, is insufficient to create a material issue of fact for trial. See Cleveland, 526 U.S. at 806. Any question of how plaintiff's disability and medical leave time was calculated is irrelevant to the court's findings, as plaintiff was not cleared for work as of August 28, 2014, the date of his deposition, more than a year after the date of his termination, and plaintiff's approved leave would have undisputedly been exhausted by that point, regardless of how it was calculated. Plaintiff fails to point to any evidence within the record that disputes the nondiscriminatory reason for termination given by defendant, that plaintiff was unable to perform the job without medical leave, and for that reason, plaintiff's termination related claims must fail.

## CONCLUSION

Based on the foregoing, upon de novo review of those portions of the M&R to which objections were raised, and upon considered review of the remaining portions thereof, pursuant to Federal Rule of Civil Procedure 53(c)(3), the court ADOPTS the recommendation of the magistrate judge as set forth herein. Defendant's motion for summary judgment (DE 19) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED this the 16th day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[7] Plaintiff now suggests that the medication he took the night before his deposition may have interfered with his ability to answer the questions asked of him on that date. Plaintiff's contention is without merit, as the record reflects that plaintiff told defendant upon questioning about the medication that he did not think he would be unable to answer the questions asked of him, and that he would let defendant know if he subsequently was unable to answer any question. (Spivey Dep. at 6:24-7:7).